**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: TATYANA MAZIK,                                                   : | Chapter 13 |
| : | |
| Debtor.                                                   : | Bk. No. 18-10643 ELF |
| : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this chapter 13 bankruptcy case, Chicago Title Insurance Co. ("Chicago Title") has moved for an enlargement of time to file a proof of claim on the ground that it did not receive notice of the case until after the deadline to file claims.

I find that Chicago Title did not have notice of this bankruptcy case or of the deadline for filing proofs of claim prior to the expiration of the deadline.  Pursuant to Fed. R. Bankr. P. 3002(c)(6), as amended effective December 1, 2017, Chicago Title is entitled to the additional time that it requests.  I will grant Chicago Title fourteen (14) days from the entry of the order accompanying this Memorandum to file a proof of claim.

## II. PROCEDURAL HISTORY

Chicago Title, a title insurance company, insured a mortgage company in two (2) of the Debtor's real estate transactions in 2005.  Due to the Debtor's alleged fraudulent conduct, the mortgages associated with those transactions were not recorded, and in 2017 the mortgage company called upon Chicago Title's insurance policy to provide coverage.  Chicago Title covered the mortgage company's losses.  In connection with the satisfaction of its insurance claim, the mortgage company assigned notes associated with the mortgages to Chicago Title.

1

The Debtor first filed a chapter 7 bankruptcy on March 28, 2017. Chicago Title filed a nondischargeability adversary proceeding in that case, alleging that the Debtor's debt on the notes was obtained by false pretenses, which constituted a willful and malicious injury. See 11 U.S.C. §§523(a)(2), (6). The chapter 7 bankruptcy case was dismissed on August 9, 2017 due to the Debtor's failure to attend two (2) scheduled meetings of creditors. See 11 U.S.C. §341. After the main chapter 7 was dismissed, the adversary proceeding also was dismissed.

The Debtor filed the instant chapter 13 case, pro se, on January 31, 2018. This set April 11, 2018 as the deadline to file timely proofs of claims. See Fed. R. Bankr. P. 3002(c) (claims bar date is "70 days after the order for relief"). The Debtor soon retained counsel, who entered his appearance on February 12, 2018, and filed the Debtor's bankruptcy schedules, statement of financial affairs and chapter 13 plan the next day, February 13, 2018.

On July 2, 2018, Chicago Title filed the instant motion for an extension of time to file a proof of claim ("the Motion"), as well as an adversary complaint seeking a nondischargeability determination. (Adv. No. 18-151, Doc. #'s 47, 48). The Debtor opposed both, filing a response to the Motion (Doc. #50) and a motion to dismiss the adversary complaint. (Adv. No. 18-151, Doc. #9). I held an evidentiary hearing on the Motion on July 31, 2018. At this hearing, both parties introduced exhibits, and Chicago Title's counsel, Dana Ostrovsky ("Ostrovsky") testified.

On October 30, 2018, I dismissed the adversary complaint with leave to amend. See In re Mazik, 2018 WL 5623649 (Bankr. E.D. Pa. Oct. 30, 2018). Chicago Title filed an amended complaint on November 16, 2018. (Adv. Doc. #18).

In the Memorandum accompanying the order dismissing Chicago Title's adversary complaint, I noted that the merits of the Motion (for an extension of time to file a proof of claim) may have some bearing on the merits of Chicago Title's cause of action (for a determination of

2

nondischargeability) in the adversary proceeding.  See 2018 WL 5623649, at *8 n. 16.

Thereafter, neither party filed further pleadings or modified its position with regard to the Motion.  Thus, the Motion is now ready for decision.

### III. DISCUSSION

#### A. Court Rules Governing the Enlargement of Time to File Proofs of Claim

Chicago Title moves for an extension of time to file a proof of claim under Fed. R. Bankr. P. 9006(b)(1), invoking, inter alia, a theory of excusable neglect due to its lack of notice of the bankruptcy.[1]

The subheading in Rule 9006(b)(1) refers to the standards governing enlargement of time "in general."  Rule 9006(b)(3) governs the standards for enlargement of time under certain listed rules.  It expressly states that a court may enlarge the time under Rule 3002(c) (for filing a proof of claim) "only to the extent and under the conditions stated in [Rule 3002(c)]."  Thus, excusable neglect under Rule 9006(b)(1) may justify enlargement of time for some actions, but not for filing proofs of claims.  If the deadline to file a timely proof of claim can be extended, it can only be done according to Rule 3002.  Rule 9006(b)(1) is irrelevant in this contested matter.

Prior to December 1, 2017, on its face, Rule 3002(c) "provide[d] no exceptions for extenuating circumstances, excusable neglect, or other cause."  In re McLarry, 273 B.R. 753, 754 (Bankr. S.D. Tex. 2002).  However, there is some division in the case law regarding the application of the plain language of the rule.  Some courts have held, based on general principles

---

[1]    Chicago Title also seeks an extension of time under Fed. R. Bankr. P. 3003, which does not apply in chapter 13 cases.  This request must be denied.

3

of equity or due process, that a creditor deprived of notice of the bar date is entitled to file a late claim.[2]  However, most courts have refused to use their equitable powers to extend the deadline, permitting extension only according to the express exceptions in Rule 3002(c),[3] which, prior to December 1, 2017, included no provision for enlargement of time due to lack of notice to a domestic creditor.[4]

Under the majority view, prior to December 1, 2017, creditors without notice of the claims bar date had no means to enlarge their time to file a claim.  All such late claims were untimely and subject to objection that would deny the claimant the right to participate in the chapter 13 distribution.  See 11 U.S.C. §502(b)(9).  The refusal to extend the time to file claims was justified by the existence of another means for creditors to safeguard their rights: nondischargeability.  See Kristiniak, 208 B.R. at 134; 11 U.S.C. §523(a)(3).[5]

Effective December 1, 2017, Rule 3002(c)(6) was amended to add a new ground for enlarging the time to file a timely proof of claim.

Rule 3002(c)(6)(A) now provides:

---

[2]     See, e.g., In re Harris, 447 B.R. 254, 258 (Bankr. W.D. Ark. 2011); In re Tarbell, 431 B.R. 826, 828 (Bankr. W.D. Wis. 2010); In re Barnes, 2008 WL 2397618, at *2 (Bankr. D.N.D. June 10, 2008).

[3]     See, e.g., In re Lovo, 584 B.R. 79, 80 (Bankr. S.D. Fla. 2018); In re Kristiniak, 208 B.R. 132 (Bankr. E.D. Pa. 1997); see also In re Brooks, 414 B.R. 65, 72 (Bankr. E.D. Pa. 2009) (describing the chapter 13 bar date as "a strict and nonnegotiable deadline, whether or not a creditor received notice").

[4]     Prior to the December 1, 2017 amendment, Rule 3002(c) provided exceptions to the hard-and-fast deadline, but only for specially situated creditors.  Minors, foreign creditors, governmental units and counterparties to a rejected executory contract could move to have the time to file a claim enlarged.  Fed. R. Bankr. P. 3002(c)(1)-(6).  Creditors without unusual circumstances had no such mechanism.

[5]     A late filed claim might also receive a distribution if neither the debtor nor another party objects. See 11 U.S.C. §502(a) (a filed claim is deemed allowed unless a party in interest objects).

> On motion filed by a creditor before or after the expiration of the time to file a proof of claim, the court may extend the time by not more than 60 days from the date of the order granting the motion. The motion may be granted if the court finds that:
>
> > **(A) the notice was insufficient** under the circumstances to give the creditor a reasonable time to file a proof of claim **because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a)**.

(emphasis added).

The Advisory Committee on Bankruptcy Rules was explicit about the purpose of this change. "Subdivision (c)(6) is amended to <u>expand the exception</u> to the bar date for cases in which a creditor received insufficient notice of the time to file a proof of claim." Fed. R. Bankr. P. 3002, 2017 Committee Note (emphasis added).

### B.  The Role of the Matrix List of Creditors in Providing Notice to Creditors

As stated above, under current Rule 3002(c)(6), the court may extend the claims deadline if the "list of creditors' names and addresses required by Rule 1007(a)" does not provide a creditor sufficient notice. Rule 1007(a) requires that a debtor file with the petition a list "containing the name and address of each entity included or to be included on Schedules D, E/F, G and H" – the schedules disclosing a debtor's secured creditors, unsecured creditors, executory contracts, unexpired leases, and codebtors.

The Local Rules of this district specify the format for this list. In this district, the list of creditors required by Rule 1007(a) is filed in a specialized format, commonly referred to as the "Matrix List of Creditors" or "Matrix." <u>See</u> L.B.R. 1007-2.

The Local Rules also impose an additional duty on debtors to keep the Matrix up to date: "A debtor who amends a schedule under Fed. R. Bankr. P. 1009(a) to add a creditor or who files a schedule of post-petition debts under L.B.R. 1019-1 shall promptly supplement the Matrix List

of Creditors." L.B.R. 1007-3(a).  Debtors are excused from updating the Matrix to include a new creditor "who has filed a proof of claim or a request for notices under Fed. R. Bankr. P. 2002(j)." L.B.R. 1007-3(b).  This is so because, as a matter of local court practice, the filing of a proof of claim causes the clerk of court to add that creditor to the Matrix.  When an attorney, on behalf of a client/party in interest, files a request for notices under Fed. R. Bankr. P. 2002, the court's CM/ECF electronic docketing system provides a mechanism for the attorney to add him or herself to the Matrix.

At different times in the course of a bankruptcy case, the content of the Matrix may change.  After the debtor files the initial Matrix, creditors are added to it through either (1) the filing of an amended Matrix by the debtor or (2) the filing of a request for notices or a proof of claim by a party in interest.  Merely scheduling a creditor in Schedules D, E/F, G or H will not place the creditor on the Matrix or ensure that the creditor gets notice.

Notices from the Bankruptcy Court itself are sent by the Bankruptcy Noticing Center ("the BNC") to the addresses on the Matrix and electronically to parties in interest that have provided electronic addresses in accordance with other rules of court.  The Matrix is the source relied upon by the BNC for determining which creditors will receive notice, either electronically or via mailing.  The BNC files on the court docket a list of all creditors to whom it sent notice of a document.

At any given time, accessing the Matrix on the court's CM/ECF system (which operates the court's docket) will show only the then-current content of the Matrix.  However, the BNC notices sent out over the life of the case, and docketed as they occur, provide a "snapshot" of the Matrix, showing which creditors were served at that time – and implicitly, which creditors were on the Matrix at that time.

With these principles in mind, the issue in this case can be stated simply:

> Did Chicago Title get sufficient notice of the instant bankruptcy case to give it a reasonable time to file a proof of claim?

Because I find that Chicago Title did not get notice of the case until after the claims bar date passed, it obviously did not have a reasonable amount of time to file a timely proof of claim.

### C. Chicago Title Did Not Receive Timely Notice of This Bankruptcy Case and the Claims Bar Date Due to the Debtor's Failure to Include It on the List of Creditors As Required by Rule 1007(a)

**1.**

The Debtor filed her petition pro se on January 31, 2018 and included with it a handwritten list of creditors. This list, which provided the entries on the initial Matrix, included only three creditors: Rushmore, Mr. Cooper[6] and Wells Fargo Bank, N.A. (Ex. M-1). None of these creditors has any association with Chicago Title; therefore, notices sent based on this initial Matrix could not have provided Chicago Title with notice of the bankruptcy filing.

The Debtor acquired counsel on February 12, 2018. The next day, the Debtor filed her schedules, which listed Chicago Title on Schedule E/F as an unsecured creditor with a disputed, unliquidated claim for $753,000.00. (Doc. #13). The address provided by the Debtor is "c/o Fidelity National Law Group, 1515 Market Street, Philadelphia, PA 19102," the address used by Chicago Title's counsel. (Transcript of the Evidentiary Hearing held on July 31, 2018, at 38) (Doc. #57). (hereafter, "Tr.").

---

[6]    Mr. Cooper is a trade name used by Nationstar Mortgage.

In addition to the schedules, the Debtor also filed a certificate of service for a motion to extend the stay on February 13, 2018. This certificate avers that Debtor's counsel served the chapter 13 Trustee, Rushmore Loan Management Services, and counsel for Nationstar Mortgage and Wells Fargo Bank. (Doc. #16). That is, on the same day the Debtor filed a sworn schedule indicating that she had a potential creditor-debtor relationship with and known address for Chicago Title, the Debtor failed to serve Chicago Title with her motion to extend the automatic stay.

Perhaps most telling is the fact – reflected on the court's docket -- that the Debtor's counsel did not amend the Matrix to add Chicago Title even after filing bankruptcy schedules that listed the creditor.

As of February 13, 2018, Chicago Title was not on notice of the case.

**2.**

On February 23, 2018, the chapter 13 Trustee filed the notice of the 341 meeting of creditors. (Doc. #20). On February 28, 2018, the 341 notice was sent by the BNC to all addresses listed on the Matrix on that date. The BNC notice was sent to Rushmore, Mr. Cooper and Wells Fargo, as well as taxing authorities, the Trustee, and the U.S. Attorney's office. (Doc. #23). It was not sent to Chicago Title.

Prior to the April 11, 2018 claims bar date, two (2) additional BNC notices were sent – to the same creditors as the BNC notice of the 341 meeting. (Doc. #'s 26, 31). None of these BNC notices would have reached Chicago Title. Thus, Chicago Title received no notice of the bankruptcy case prior to the expiration of the claims bar date.

**3.**

Chicago Title's conduct during this period was consistent with its contention that it lacked notice of the bankruptcy case.

On March 18, 2018, Chicago Title's counsel, Ostrovsky, filed a collections complaint against the Debtor and other defendants in the U.S. District Court for the Eastern District of Pennsylvania. ("the District Court Case"). See No. 18-cv-1116-CDJ (E.D. Pa.).  Had Ostrovsky known of this bankruptcy, filing a debt collection case would have been a brazen and willful violation of the stay, subjecting Chicago Title to damages under 11 U.S.C. §362(k).  Ostrovsky testified credibly that the only reason she filed the District Court Case was that she did not know of the bankruptcy case. (TR. at 35-36).  Ostrovsky also pointed out that on March 18, 2018, the Debtor returned a waiver of the service of summons in the District Court Case. (Tr. at 35).  That is, the Debtor received a notice of the District Court Case, and then signed a document accepting service of process without giving notice that anything was amiss. See Fed. R. Civ. P. 4.  While a waiver of service is generally a minor event, the Debtor's actions lulled Ostrovsky, giving her no reason to suspect that the instant case had been filed.

The Debtor states in her Response to the Motion that she

> did schedule the Movant's claim as an unsecured, disputed, unliquidated claim in this case and included the Movant on the Mailing Matrix in this case. As a result, the Movant was served with a copy of the Debtor's Motion to extend the automatic stay in this case and was conclusively presumably served by the Clerk's office with notice of the Meeting of Creditors and applicable deadlines in this case.

(Debtor's Response ¶ 4).

Other than the statement that the Debtor listed Chicago Title in her schedules, the balance of this representation is simply untrue.  Chicago Title was not included on the Matrix as initially

filed. No updated Matrix was ever filed. Chicago Title was listed in Schedule E/F, but scheduling a creditor does not place the creditor on the Matrix. The Debtor had a duty to file a complete and accurate list of creditors and update the Matrix, but her counsel failed to do so. The Debtor's counsel never provided notice to Chicago Title and, as a result of the failure to add Chicago Title to the Matrix, neither did the BNC.

Ostrovsky credibly testified that she did not learn of the bankruptcy case until the Debtor's co-defendants[7] filed a suggestion of bankruptcy in the District Court Case, on May 21, 2018. (Tr. at 36). By that date, the April 11, 2018 deadline to file a timely proof of claim had passed. Ostrovsky testified that after learning of the instant case, she accessed the Matrix before she filed her notice of appearance, and that Chicago Title was still not on the Matrix as of June 18, 2018. Id.[8]

**4.**

The relevant Rule in the case - Rule 3002(c)(6)(A) - is new and, consequently, there are no reported decisions on point. As a matter of first impression, I hold that Chicago Title, the party moving for relief, has the burden of showing it did not get timely notice of the case.

I also hold that the requirement before an extension may be granted under the Rule 3002(c)(6)(A) -- i.e., that the lack of notice must be caused by the debtor's "failure to timely file

---

[7] These co-defendants are also cross-claim plaintiffs against the Debtor, and are represented by counsel. The Debtor was proceeding pro se in the District Court Case.

[8] Ostrovsky filed this Motion, her entry of appearance, and an adversary complaint on July 2, 2018. (Doc. #'s 45, 47, 48). Those actions led to the update of the Matrix. As a result, Chicago Title appears on every Matrix accessed after that date.

the list of creditors' names and addresses required by Rule 1007(a)" is satisfied if the debtor files a list of creditors that omits the name and address of the creditor seeking relief under the rule. This is so because the omission of the creditor from the filed list constitutes a failure to comply with the requirement in Rule 1007(a) that the list include the name and address "of each entity included or to be included on Schedules D, E/F, G and H."

The evidence in the record shows that Chicago Title was not on the Rule 1007(a) list of creditors and had no notice of the bankruptcy case prior to the expiration of the claims bar date. The evidence shows that Chicago Title learned of the case from a third party, not the Debtor, and that its addresses eventually appeared on the Matrix because of Ostrovsky's actions, not because the Debtor sent proper notice.

### IV. CONCLUSION

This contested matter fits squarely into the language of Rule 3002(c)(6)(A). Notice to Chicago Title of the deadline for filing a proof of claim was insufficient (indeed, there was no notice at all to Chicago Title) because the Debtor failed to include Chicago Title on the list of creditors required by Rule 1007(a) (which in this district is the Matrix). In these circumstances, without hesitation, I will exercise my discretionary authority under Rule 3002(c)(6)(A), to enlarge the time for Chicago Title to file a proof of claim.

Date: **November, 29, 2018**

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**