# Exhibit "B"



### SN SERVICING CORPORATION

323 5th Street, Eureka, CA 95501
800-603-0836
Main Office- NMLS ID #5985, Branch Office- NMLS ID #9785

Para información en español llame al (800) 603-0836 ext 2643 o ext 2660
For more information in Spanish call (800) 603 0836 ext 2643 or 2660

8/19/2019

TATYANA MAZIK
1269 WALLER DR
HUNTINGDON VALLEY PA 19006

YOU ARE HEREBY NOTIFIED THAT SN SERVICING CORPORATION, THEIR EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.

IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.

## MODIFICATION TRIAL PERIOD PLAN

Trial Period Plan Effective Date: 10/1/2019
Borrower ("I")[1]: TATYANA MAZIK
Servicer ("Servicer"): SN Servicing Corporation, servicing agent for U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust
Date of Security Instrument: 3/27/2003 ("Mortgage")
Date of Note: 3/27/2003 ("Note")
FHA or Bankruptcy Case #: 18-10643
Loan Number: ▮
Property Address ("Property"): 1269 WALLER DRIVE, HUNTINGDON VALLEY PA 19006

| PROPOSED MODIFICATION TERMS*** | | | | | | |
|---|---|---|---|---|---|---|
| RATE | TERM | INTEREST BEARING UPB | P&I PAYMENT | DEFERRED UPB | ESTIMATED DEBT FORGIVENESS | FULLY AMORTIZING OR BALLOON |
| 6.00% | 480 | $333,008.83 | $1,832.26 | $193,491.17 | $128,154.48 | FULLY AMORTIZING |

***If you accept and agree to the terms above, please initial  T.M     Y.M

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MODIFICATION TRIAL PERIOD PLAN                                04/23/2019 (page 1 of 5 pages)

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer, and agree:
   A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);
   E. Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and
   F. If Servicer requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $2,870.43. **The Trial Period Payment to be provided to the Servicer in the form of certified funds. Borrower agrees to make the monthly Trial Payment until the Final Modification documents have been fully executed and received by Servicer.**

| Trial Period Payment # | P&I Payment | T&I Payment | Total Trial Period Payment | Due Date On or Before |
|---|---|---|---|---|
| GOOD FAITH PAYMENT | | | $1,832.26 | **August 31, 2019** |
| 1 | $1,832.26 | $1,038.17 | $2,870.43 | October 01, 2019 |
| 2 | $1,832.26 | $1,038.17 | $2,870.43 | November 01, 2019 |
| 3 | $1,832.26 | $1,038.17 | $2,870.43 | December 01, 2019 |
| 4 | $1,832.26 | $1,038.17 | $2,870.43 | January 01, 2020 |
| 5 | $1,832.26 | $1,038.17 | $2,870.43 | February 01, 2020 |
| 6 | $1,832.26 | $1,038.17 | $2,870.43 | March 01, 2020 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Servicer no later than October 01, 2019 or I may not be accepted into the Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. **TIME IS OF THE ESSENCE** under this Plan;

B. Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Servicer will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if the Servicer determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Servicer's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement(s) and/or subordination agreement(s) from other lien holders, as Servicer determines necessary.

H. I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if the Servicer determines that I do not qualify or if I fail to meet any one of the requirements under this Plan. If, under the Servicer's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement(s) and/or subordination agreement(s) from other lien holders, as Servicer determines necessary.

I. The status of your loan maybe reported monthly to all respective credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, for the duration of this Agreement and thereafter, SN Servicing Corp. may report your Loan as delinquent if your Loan is not completely contractually current under your Loan documents, even if you make timely payments to SN Servicing Corp. in accordance with the Schedule or Amended Schedule, if any. This Agreement does not constitute an agreement by SN Servicing Corp to waive any reporting of the delinquency status of your Loan payments. SN Servicing Corp. specifically reserves any rights it may have relating to your Loan, including any rights it may have under your note and security instrument.

3. **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Servicer has waived this requirement in writing.
   B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.
   C. If Servicer may establish an escrow account under applicable law, this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Servicer will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.
E. That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan if an error is discovered.
F. That Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.
G. That, as of the Trial Period Plan Effective Date, I understand that the Servicer will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Servicer and I have executed this Plan.

U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust

By SN Servicing Corporation, servicing agent

By: _____
Jeff Harrison, Authorized Agent
NMLS #1314656

Date: 8/28/19

_____
TATYANA MAZIK "Borrower"

Date: 08/23/2019

_____
YURIY MAZIK "Vested Interest"

Date: 08/23/2019

