# Exhibit "C"

**MODIFICATION AGREEMENT**

BEFORE the undersigned Notaries Public, in and for the respective county/parish and state listed hereafter, came and appeared the following parties:

TATYANA MAZIK ("Borrower") and YURLY MAZIK ("Vested Interest")  hereinafter referred to as ("Borrower(s)") and SN Servicing Corporation, servicing agent for U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust with a mailing address of 323 5th Street, Eureka, California 95501, as ("Lender")

Who declared that they are entering into this Agreement as follows:

Borrower acknowledges that as of the date stated herein, the Lender is the holder by Assignment of certain Note ("Note") and Mortgage, Deed of Trust, Security Deed ("Security Instrument") made by TATYANA MAZIK ("Borrower") in favor of CHASE MANHATTAN MORTGAGE CORPORATION in the original principal amount of $322,700.00 together with an interest rate of 5.50% per annum.  The indebtedness secured by this Security Instrument is evidenced by certain Note dated March 27, 2003, with an interest rate of 5.50% payable in monthly installments to the order of Lender.

This Modification Agreement ("Agreement"), made June 10, 2020 between TATYANA MAZIK ("Borrower") and YURLY MAZIK ("Vested Interest")  and U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, Security Deed ("Security Instrument"), dated March 27, 2003, and recorded with the Deed of Records of MONTGOMERY County, PA, and (2) the Note ("Note"), bearing the same date, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the ("Property"), located at 1269 WALLER DRIVE, HUNTINGDON VALLEY, PA, 19006, the real property described being set forth as follows as described in the attached "Exhibit A".

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in the Modification. The Borrower and the Lender agree to modify the terms of the Note and Security Instrument as follows. The Borrower and the Lender agree that the provisions of this modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument:

1) As of June 10, 2020 the unpaid principal balance under the Note and the Security Instrument is U.S. $290,893.73 consisting of the amounts loaned to Borrower, not including interest or advances.

2) The Borrower acknowledges that the Lender has incurred, paid or otherwise advanced taxes and or insurance premiums and other expenses necessary to protect and preserve its interest pursuant to the Note and Security Instrument, and that such costs and expenses equal to the total amount of $235,606.27. The following are the costs and expenses advanced on the Borrower's behalf:

    a. Accrued & Unpaid Interest    $86,045.23
    b. Escrow Shortage Advanced    $149,561.04

3) The Borrower agrees that the amount that has been advanced by the Lender will be added to the unpaid principal balance payable under the Note and Security Instrument. Therefore, the unpaid principal balance has been **increased** to $526,500.00. The Borrower agrees to accept a modified payment schedule to repay the unpaid principal balance.

4) The Borrower accepts the modification and agrees to pay the increased unpaid principal balance, together with interest, late charges, and advances.  The following terms have been modified:

    i.  $193,491.17 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $333,008.83.

    ii.  Interest at the rate of 6.00% will begin to accrue on the **adjusted** New Principal Balance of $333,008.83 as of MARCH 01, 2020 and the first new monthly payment on the New Principal Balance will be due on APRIL 01, 2020. My  payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 6.00% | 03/01/2020 | $1,832.26 | $1,050.42, May adjust periodically | $2,882.68 | 04/01/2020 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The above terms in this Section shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

b. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

c. Interest under this Modification shall be an Arrears method and calculated on a 360-day year consisting of twelve 30-day months.

d. Borrower shall make monthly payments of principal and interest of U.S. $1,832.26, beginning on APRIL 01, 2020, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

e. Monthly payments are amortized 480 months due and payable in 480 months.

f. Servicer agrees to forbear $193,491.17 in principal to the maturity date or the date the loan is paid in full whichever comes first.

g. The principal and interest payment does not include the monthly escrow constant of $1,050.42.  The monthly escrow constant is subject to change at each analysis.

h. Total payment amount is $2,882.68.

i. Lender will bring the loan due for the April 01, 2020 payment.

j. Current deferred indebtedness includes:

   i. $193,491.17 in Forbeared Principal

k. Forgiven amounts totaling $123,524.97 includes:

   i. $85,945.31 in Accrued & Unpaid Interest (remaining balance)
   ii. $1,739.04 in Prior Servicer Late Charges
   iii. $34,490.62 in Prior Servicer Corporate Advances
   iv. $1,350.00 in Attorney Fees

l. If on **MARCH 01, 2060** ("EXTENDED MATURITY DATE"), there remains an amount due under the Note and the Security Instrument, as amended by this Agreement, this amount shall be due in full on the Maturity Date.

m. Borrower will make such payments at such place as Lender may require.

5) Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Note and Security Instrument.  The following terms and provisions are modified and amended as of the date specified in paragraph No. 1 above:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note are waived.  By executing this Agreement, Borrower agrees to make the same monthly payments of principal and interest as stated herein above for the remaining term of the Note.

   b. all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions providing for an adjustment in the interest rate are changed to set the rate as stated herein.

6) Borrower(s) agrees that in the event of a default under the terms of this Agreement, the Lender may exercise all rights and remedies provided in the Note and Security Instrument and as provided by applicable law, including any judicial or non-judicial foreclosure or other proceeding.

7) Borrower(s) hereby consents and agrees that in the event suit is instituted, the Lender may enforce any and all of the provisions of the Note and Security Instrument and proceed immediately to collect the full amount of principal, interest, attorney fees and costs as acknowledged herein.

8)  In the event any of the provisions contained hereinabove are determined to be unenforceable by a court
of competent jurisdiction and it is necessary to proceed to trial, then Borrower irrevocably waives all
rights to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement
or the obligations modified thereby.

9)  In addition to the events of default contained in the Note and Security Instrument it will be an event of
default under this Agreement if the Borrower(s) fails to pay the modified payment schedule according
to the terms set forth hereinabove.

10) For and in consideration of the forbearance and benefits received herein, Borrower(s) hereby releases
and forever discharges the Lender, and all previous holders of the hereinabove described Note from any
and all claims of whatever nature and kind arising out of all transactions related to said Note.

11) The Lender and Borrower(s) agrees that all provisions of the Security Instrument and any other collateral
documents not specifically mentioned herein shall remain in full force and effect, and Borrower(s) shall
comply with all covenants, agreements and requirements of the security instrument.

12) In the event that any one or more of the provisions contained in this Agreement or in the Loan
Documents shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity,
illegality or unenforceability shall not affect any other provisions of the Loan Documents.

13) Nothing in this Agreement shall be understood or construed to be a satisfaction, novation, remission, or
release in whole or in part of the Note, Mortgage, and security documents.  Except as otherwise
specifically provided in this Agreement, the Note, Mortgage and Security Instrument will remain
unchanged and Borrower(s) will be bound by and obligated to comply with all of the terms and provisions
thereof, as amended by this Agreement.

14) On the loan payments due date, default will occur if the payment is not received within the allowable
grace period (if applicable).

15) If the Borrower has, since inception of the loan but prior to this Agreement, received a discharge in a
Chapter 7 Bankruptcy, and there having been no valid reaffirmation agreement of the underlying debt,
by entering into this agreement, the Lender is not attempting to re-establish any personal liability for
the underlying debt. Acceptance of the modification shall not make the Borrower personally liable for
the debt. Any payments received will reduce the amount due under this Agreement.

16) This Agreement shall be binding upon and inure to the benefit of, the Borrower and the Lender and
their respective heirs, legal representatives, successors and assigns.


Dated:  _____          Dated:  _____

I acknowledge and agree to the modification to the Note and Security Instrument set forth above.


**WITNESSES:**

_____          _____
                                      TATYANA MAZIK ("Borrower")


_____          _____
                                      YURLY MAZIK ("Vested Interest")

**ACKNOWLEDGEMENT**

STATE OF _____    )
                                 )ss.
COUNTY OF _____    )

        On _____ before me, _____, Notary Public,
personally  appeared  _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph
is true and correct.

        WITNESS my hand and official seal.


                                      _____
[Seal]                                Notary Public
                                      My Comm. Expires

## **ACKNOWLEDGEMENT**

STATE OF _____ )
                                                    )ss.
COUNTY OF _____ )

      On _____ before me, _____, Notary Public,
personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity(ies) upon which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph
is true and correct.

      WITNESS my hand and official seal.


                                                        _____
[Seal]                                               Notary Public
                                               My Comm. Expires

**WITNESSES:**

_____

_____

U.S. Bank Trust National Association, as Trustee of the
Lodge Series III Trust
BY SN SERVICING CORPORATION, ITS SERVICING AGENT

BY: _____

      JEFF HARRISON
ITS:    AUTHORIZED AGENT
NMLS:  1314656

DATE: _____

_____

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

### ACKNOWLEDGEMENT

STATE OF CALIFORNIA

             )ss.

COUNTY OF HUMBOLDT

      On _____, 2020 before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

      I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

      WITNESS my hand and official seal.

                                      _____

[Seal]                                          Notary Public
                                          My Comm. Expires:

### EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground, situate in Lower Moreland Township, Montgomery County, Pennsylvania, and described according to a certain Plan thereof known as Plan of Subdivision made for L.W.T. Waller, Jr., by Russell S. Lyman, Registered Professional Engineer, dated June 30, 1966 and last revised November 15, 1966, said Plan being recorded in the Office of the Recorder of Deeds for Montgomery County at Norristown, Pennsylvania in Plan Book A-10, page 26, as follows, to wit:

BEGINNING at a point on the Northeasterly side of a cul-de-sac (of irregular width at the end of Waller Road (50 feet wide) said point being the six following courses and distances from a point of curve on the Southwesterly side of Welsh Road (L.R. 46098) (46.50 feet wide) (1) leaving Welsh Road on the arc of a circle curving to the right having a radius of 25 feet the arc distance of 41.15 feet to a point of tangent on the Northwesterly side of Waller Drive (2) South 39 degrees 09 minutes 20 seconds West along the Northwesterly side of Waller Drive 517.75 feet to a point of curve; (3) Southwestwardly and Northwestwardly partly along the Northwesterly side of Waller Drive and partly along the Northeasterly side of Waller Road (50 feet wide) on the arc of a circle curving to the right having a radius of 125 feet the arc distance of 198.68 feet to a point of tangent on the Northeasterly side of Waller Road (4) North 49 degrees 46 minutes 36 seconds West along the Northeasterly side of Waller Road 103.61 feet to a point of curve at beginning of said cul-de-sac (5) Northwestwardly, Northwardly along the aforesaid cul-de-sac on the arc of a circle curving to the right having a radius of 50 feet the arc distance of 41.31 feet to a point of reverse curve; and (6) Northwardly and Northwestwardly still along the aforesaid cul-de-sac on the arc of a circle curving to the left having a radius of 60 feet the arc distance of 19.50 feet to a point of beginning; Thence extending from said point of beginning Northwestwardly and Southwestwardly along the aforesaid cul-de-sac on the arc of a circle curving to the left having a radius of 60 feet the arc distance of 98.19 feet to a point on the Northeasterly side of the future extension of Waller Road; Thence extending North 49 degrees 46 minutes 36 seconds West along the Northeasterly side of the future extension of Waller Road 67.03 feet to a point; thence extending North 44 degrees 02 minutes 15 seconds East crossing the Southwesterly side of a certain 30 feet wide right of way for drainage 150.33 feet to a point in the bed of said right of way; thence extending South 49 degrees 46 minutes 36 seconds East through the bed of the aforesaid right of way 140.10 feet to a point; thence extending South 40 degrees 13 minutes 24 seconds West recrossing the Southwesterly side of said 30 feet wide right of way for drainage 122.22 feet to the first mentioned point and place of beginning.

BEING known as 1269 Waller Road.

TOGETHER with all of the grantor's right, title and interest in and to that portion of the future extension of Waller Road abutting premises described above (as shown on said Plan) bounded by the aforementioned cul-de-sac, (on the Southeast) the Northwesterly line of the above described Lot Number 12 as produced (on the Northwest), the center line of the said proposed extension of Waller Road (on the Southwest) and the Northeasterly line of the proposed extension of Waller Road (on the Northeast).

TOGETHER with the right (in common with the owners or occupiers of the other lots in the aforementioned Plan of Subdivision) to use all of the proposed extension of Waller Road (as shown on said Plan) for access to the premises conveyed hereby, provided however, that Grantees shall have no responsibility for the maintenance of the proposed extension of Waller fun until such time as is made thereof.